VAN NORTWICK, J.
In this workers’ compensation appeal, Claimant Eugene Jacobson appeals orders of the Judge of Compensation Claims (JCC) that grant, in part, the Employer/Carrier’s (E/C’s) motion to tax costs against him under section 440.34(3), Florida Statutes (2007), and deny Claimant’s motion to approve a retainer agreement between him and Michael J. Winer, under which Winer would have provided legal services to Claimant limited to representation in the defense to oppose the E/C’s motion to tax costs. Claimant challenges the constitutionality of sections 440.105(3) (c) and 440.34 insofar as these sections preclude him from contracting for legal services to defend against the E/C’s motion to tax costs. We conclude to the extent that sections 440.34 and 440.105(3)(c), Florida Statutes, prohibit Claimant from retaining counsel to defend a motion to tax costs against him, those statutes infringe upon Claimant’s constitutional rights under the First Amendment of the Constitution. Accordingly, as applied here, sections 440.34 and 440.105(3)(c) are unconstitutional. For the reasons set forth herein, we reverse the orders of the JCC, and remand for a new hearing on the motion to tax costs and motion to approve a retainer. On remand, the JCC has the authority to determine whether the proposed fee is reasonable.
Legal Background
Under section 440.105(3)(c), Florida Statutes (2007), an attorney may be guilty of a first-degree misdemeanor if the attorney receives payment for work relating to a workers’ compensation case, unless the payment is approved by a JCC. The statute provides: “It is unlawful for any attor *1046 ney or other person ... to receive any fee or other consideration or any gratuity from a person on account of services rendered for a person in connection with any proceedings arising under this chapter, unless such fee, consideration, or gratuity is approved by a[JCC],...” Even though the plain language of this subsection does not limit its application only to attorneys representing claimants, it has long been interpreted as such in practice. See Altstatt v. Fla. Dep’t of Agric., 1 So.3d 1285, 1286 (Fla. 1st DCA 2009) (“We find it unnecessary to decide whether the legislature intended section 440.105(3)(c) to apply to requests for payments made by attorneys representing employers, carriers and servicing agents, as well as to those made by attorneys representing claimants.”).
Section 440.34, Florida Statutes (2007), generally governs attorney’s fees and costs in the workers’ compensation context. Notably, section 440.34(1) limits a JCC’s ability to approve a fee, as follows:
A fee, gratuity, or other consideration may not be paid for a claimant in connection with any proceedings arising under this chapter, unless approved as reasonable by the [JCC] or court having jurisdiction over such proceedings. Any attorney’s fee approved by a[JCC] for benefits secured on behalf of a claimant must equal to 20 percent of the first $5,000 of the amount of the benefits secured, 15 percent of the next $5,000 of the amount of the benefits secured, 10 percent of the remaining amount of the benefits secured to be provided during the first 10 years after the date the claim is filed, and 5 percent of the benefits secured after 10 years. The [JCC] shall not approve a compensation order, a joint stipulation for lump-sum settlement, a stipulation or agreement between a claimant and his or her attorney, or any other agreement related to benefits under this chapter that provides for an attorney’s fee in excess of the amount permitted by this section. The [JCC] is not required to approve any retainer agreement between the claimant and his or her attorney. The retainer agreement as to fees and costs may not be for compensation in excess of the amount allowed under this section.
Section 440.34(2) begins, “[i]n awarding a claimant’s attorney’s fee, the judge of compensation claims shall consider only those benefits secured by the attorney.” In Kauffman v. Community Inclusions, Inc., 57 So.3d 919 (Fla. 1st DCA 2011), this court held there is no significant difference between fees “awarded” and fees “approved.” Further, section 440.34(3), which once permitted only prevailing claimants (not E/Cs) to tax costs against the nonpre-vailing party, was amended as of October 1, 2003, to permit “any party” that had prevailed in a workers’ compensation matter to tax costs against the nonprevailing party. Thus, for the first time in the history of the Workers’ Compensation Law, chapter 440 exposes claimants to liability for prevailing-party costs for routine claims. See § 440.34(3), Fla. Stat. (2007); Ch. 03^412, § 26, at 3944, Laws of Fla. In the case under review, the E/C was the prevailing party. The only issues pending are the E/C’s motion to tax costs against Claimant and the Claimant’s motion seeking approval of payment to counsel to defend the E/C’s motion.

Factual and Procedural Background

Claimant suffered a compensable work accident on September 4, 2007, injuring his neck and back. As a result, he underwent surgery, a cervical spine fusion. Doctors recommended another surgery to repair a herniated cervical disk. In 2010, the JCC denied both continued compensability of Claimant’s low back condition and permanent total disability (PTD) benefits, finding Claimant (i) did not prove the compensable accident remained the major contributing *1047 cause of his current back condition or need for treatment and (ii) did not prove he cannot perform at least sedentary employment within fifty miles of his home.
Subsequently, the E/C filed a motion to tax costs against Claimant pursuant to section 440.34(3), alleging it had prevailed on every issue addressed in the 2010 order denying benefits. Shortly thereafter, Claimant’s counsel withdrew on the grounds that “it is no longer economically viable for the undersigned to continue representation of the claimant in this case.” Claimant then retained counsel Winer. On Claimant’s behalf, Winer filed a response to the E/C’s motion to tax costs. Claimant and Winer also sought approval of an hourly retainer agreement, “for services and advice solely on issues that arise as a result of the Verified Motion to Tax Costs against Claimant” at the rate of $175 per hour. In his motion, Claimant argued that there is a genuine question as to whether a reduction in costs and representation at a cost hearing is a “benefit secured” to Claimant under chapter 440; that such a fee would not violate section 440.34(1), Florida Statutes, because it is being paid “by the claimant and not for the claimant”; and that denying approval would violate Claimant’s constitutional rights.
At the hearing on the motion for approval, Claimant testified he had no legal training, background or experience; a representative of Claimant’s former counsel’s firm testified that the firm withdrew from representation because of the inability to recover its costs for the time it had put in, and he knew of no other attorneys who could afford such a situation; and Winer testified his requested fee was below market value and no attorney would take Claimant’s case without an hourly retainer. The JCC denied the motion to approve the retainer agreement, ruling that chapter 440 prohibited her from approving an hourly fee under such circumstances. Winer then withdrew as Claimant’s counsel of record.
Claimant appeared at the cost hearing pro se and, after the hearing, the JCC awarded the E/C $17,145.76 in costs. On appeal, Claimant argues (1) there is reversible error in the cost award; (2) the JCC erred in reading section 440.34 to preclude, as a matter of law, approval of the retainer agreement at issue; (3) the JCC’s ruling violates Claimant’s First Amendment rights to free speech, freedom of association, and the right to petition the government for redress and, as a result, infringes on Claimant’s right to contract for legal counsel; and (4) the JCC’s ruling violates both the separation of powers doctrine and various personal rights under the Florida Constitution, including the rights to due process, equal protection, privacy, and access to courts.

The Cost Award

Claimant alleges errors regarding three line items in the award of costs to the E/C. Whether we agree with Claimant is not dispositive of the issue, because our constitutional analysis set forth below requires a new hearing on the E/C’s motion to tax costs. We note, however, that, on remand, the JCC should consider Marton v. Florida Hospital Ormond Beach, 98 So.3d 754, 754 (Fla. 1st DCA 2012), published only after the JCC entered her final order on the motion to tax costs.

Statutory Interpretation

As an alternative to his constitutional argument, Claimant suggests that this court read section 440.34(1) in such a way as to avoid reaching constitutional questions. Such a goal is indeed desirable. Murray v. Mariner Health, 994 So.2d 1051, 1057 (Fla.2008) (“ ‘[Wjherever possible, statutes should be construed in such a manner so as to avoid an unconstitutional result.’ ”) (quoting State v. Jefferson, 758 *1048 So.2d 661, 664 (Fla.2000)). We find, however, that no reading of the applicable statutes will satisfy this goal. Claimant suggests that we read the first sentence of section 440.34(1) — specifically the phrase indicating a ,fee may not be paid “for a claimant” — as applying only to E/C-paid claimant-attorney fees. We reject this reading for. three reasons. First, the phrase does not inherently exclude a claimant’s paying a fee “for himself,” that is, on his own behalf. Second, the phrase seems to be a mere artifact of the prior version of section 440.34(1), which read, “[a] fee, ... may not be paid for services rendered for a claimant....” Third, the Florida Supreme Court seemingly foreclosed any argument that section 440.34(1) is limited to E/C-paid fees when it stated in Murray that “subsection (3) pertains specifically to attorney fees which a claimant is entitled to be awarded against the E/C” and “[sjubsection (1), on the other hand, covers attorney fees generally” and “the specific subsection (3) controls over the general subsection (1) when subsection (3) is applicable.” 994 So.2d at 1061.

Constitutionality

We conclude there is a violation of Claimant’s rights under the federal Constitution; accordingly, we decline to address the claims asserted under the Florida Constitution. The First Amendment of tlie United States Constitution states in full:
Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
Although the amendment does not use the word “association,” the right to freedom of association has grown from the rights “to peaceably assemble” and to enjoy freedom of speech. See Eccles v. Nelson, 919 So.2d 658, 661 (Fla. 5th DCA 2006). Further, although the wording of the amendment specifies the right to petition is “to petition the Government for a redress of grievances,” jurisprudence is clear that the right includes petitions of private actors seeking personal gain. See, e.g., E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 138-39, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).
First Amendment rights are undoubtedly fundamental. State v. J.P., 907 So.2d 1101, 1109 (Fla.2004) (holding right is fundamental if it “has its source in and is explicitly guaranteed by the federal or Florida Constitution”). Therefore, we apply strict scrutiny to section 440.34, regarding its effect on these First Amendment rights when taken in conjunction with section 440.105(3)(e). Notably, these three rights may be analyzed together because they, “though not identical, are inseparable.” NAACP v. Clairborne Hardware Co., 458 U.S. 886, 911, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) (quoting Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 89 L.Ed. 430 (1945)).
To survive strict scrutiny, a law “[a] must be necessary to promote a compelling governmental interest and [b] must be narrowly tailored to advance that interest,” and “[c] accomplishes its goal through the use of the least intrusive means.” J.P., 907 So.2d at 1110. We view the “speech” at issue not as the attorney’s solicitation of a potential client, which would perhaps be subject to a slightly different analysis as commercial speech (subject to less constitutional protection than non-commercial speech). See Florida Bar v. Went For It, Inc., 515 U.S. 618, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995); see also Atwater v. Kortum, 95 So.3d 85 (Fla.2012) (holding statutory limitation on public adjusters’ commercial speech to be un *1049 constitutional). The speech at issue here is Claimant’s own words — given voice through his attorney — spoken or written before the court in his defense during litigation. Further, the rights to assembly and petition are implicated in this respect because they are “cognate rights.” See Claiborne Hardware, 458 U.S. at 911, 102 S.Ct. 3409. Finally, all three rights are implicated because the right to hire an attorney stems from these three enumerated rights. See United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass’n, 389 U.S. 217, 221-22, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967) (“We hold that the freedom of speech, assembly, and petition guaranteed by the First and Fourteenth Amendments gives petitioner the right to hire attorneys on a salary basis to assist its members in the assertion of their legal rights.”).
The governmental interests suggested to be the basis of the legislation at issue here include the regulation of attorney’s fees in general, as described in Somaha v. State, 389 So.2d 639, 640 (Fla.1980); lowering the overall cost of the workers’ compensation system, as described in Acosta v. Kraco, Inc., 471 So.2d 24 (Fla.1985) (mentioning state interests of “reducing fringe benefits to reflect productivity declines associated with age, ... and reducing workers’ compensation premiums” as well as “preventing] double dipping” into both wage-loss benefits and social security retirement benefits); and protecting injured workers who are of relatively limited financial means, as described in Lundy v. Four Seasons Ocean Grand Palm Beach, 932 So.2d 506, 510 (Fla. 1st DCA 2006). Regarding the first suggested governmental interest, regulation of attorney’s fees in general, we conclude that Lundy, Samaha, and Khoury v. Carvel Homes South, Inc., 403 So.2d 1043, 1045 (Fla. 1st DCA 1981), all relate the general interest in regulating fees specifically to the state’s interest in protecting the amount of benefits secured by an injured worker under chapter 440 from depletion to pay a lawyer’s bills. Accordingly, it is not evident from case law that these fee regulations represent a general interest in “regulating attorney’s fees.”
Regarding the second suggested governmental interest, lowering the cost of workers’ compensation premiums, this interest is not implicated in the instant case because it is Claimant, not the E/C, who would pay the fee implicated by the legal work at issue here — defending against the E/C’s motion to tax costs. Thus, premiums charged by insurers would be unaffected.
Regarding the third suggested governmental interest, protecting the body of workers’ compensation benefits from depletion, there can be no depletion of benefits where there are no benefits. A successful defense against an E/C’s motion to tax costs does not constitute “benefits secured.” After the 2003 amendment to section 440.34(3), where a claimant who loses all claims is liable for the E/C’s costs, the ultimate source of any claimant-paid attorney’s fee is never the E/C and the legal work done is paid for by a claimant from a source other than “benefits secured.” Consequently, these statutes do not survive strict scrutiny.
 We recognize that an exception to strict scrutiny review exists for laws that permissibly restrict the time, place, or manner of the exercise of the rights to free speech, association, and petition; such laws must (a) be content-neutral, (b) be narrowly tailored to serve a significant (rather than “compelling”) governmental interest, and (c) leave open alternative channels of communication. See, e.g., Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984) (holding National Park Service regulation, prohibiting camping in certain parks, did not violate First Amend *1050 ment even though applied to protestors bringing attention to plight of homeless people, but was either reasonable time, place, and manner restriction or regulation of symbolic conduct); 421 Northlake Blvd. Corp. v. Village of N. Palm Beach, 753 So.2d 754 (Fla. 4th DCA 2000) (holding zoning ordinance, restricting location of adult nude dancing establishments, is constitutional as reasonable restriction on exercise of First Amendment right to free speech). Reasonable time, place, and manner restrictions are not subject to (or are exempt from) strict scrutiny because they need not be the least intrusive means of achieving the desired end. See Ward v. Rock Against Racism, 491 U.S. 781, 797, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (reviewing content-neutral volume ordinance to determine whether it was narrowly tailored to serve legitimate government interest and leaves open alternative channels of communication); DA Mortgage, Inc. v. City of Miami Beach, 486 F.3d 1254 (11th Cir.2007) (same); Montgomery v. State, 69 So.3d 1023 (Fla. 5th DCA 2011) (same).
We conclude that sections 440.105(3)(c) and 440.34 do not constitute reasonable time, place, or manner restrictions on Claimant’s First Amendment rights to free speech, free association, and petition for redress. There is no significant governmental interest being served, because there is no “benefit secured” associated with the fees at issue in this case and, thus, no need to protect such from depletion. Moreover, the legislation is not content-neutral. “The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.” Ward, 491 U.S. at 791, 109 S.Ct. 2746. The fee restrictions at issue here are not content-neutral, both because they are limited to work done on workers’ compensation issues as opposed to other areas of law, and because they are imposed only on claimants arguing in defense against an E/C’s motion to tax costs, rather than on both parties’ arguments regarding a motion to tax costs.
The legal test regarding the right to contract is similar. The right to contract for legal services emanates from the First Amendment; the United States Supreme Court has stated, “We hold that the freedom of speech, assembly, and petition guaranteed by the First and Fourteenth Amendments gives petitioner the right to hire attorneys on a salary basis to assist its members in the assertion of their legal rights.” United Mine Workers, 389 U.S. at 221-22, 88 S.Ct. 353 (vacating judgment enjoining union from hiring salaried attorney to assist members in assertion of legal rights with respect to workers’ compensation claims). “[United Mine Workers ] supports the proposition that laypersons have a right to obtain meaningful access to the courts, and to enter into associations with lawyers to effectuate that end.” Lawline v. Am. Bar Ass’n, 956 F.2d 1378, 1387 (7th Cir.1992). Like the First Amendment rights to freedom of speech, assembly, and petition, the right to contract for legal services is a fundamental right, implicating strict scrutiny. See Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881, 884 (Fla.1974) (holding section 83.271, regulating grounds for eviction from mobile home parks, is not unconstitutional violation of contract rights). The right to contract is substantively different from other First Amendment rights, however, because it is a property right.
As a property right, the right to contract has a different exception: it is subject to “reasonable restraint” under the police power of the State, the right being “the general rule” and its restraint “the exception to be exercised when necessary *1051 to secure the comfort, health, welfare, safety and prosperity of the people.” Golden v. McCarty, 337 So.2d 388, 390 (Fla.1976) (holding section 877.04, Florida Statutes, restricting who may perform tattooing, is constitutionally valid) (quoting Strong, 300 So.2d at 884). “There is no settled formula for determining when the valid exercise of police power stops and an impermissible encroachment on private property rights begins.” Graham v. Estuary Props., Inc., 399 So.2d 1374, 1380 (Fla.1981) (reviewing decision to deny approval for development of wetland). Nonetheless, the Florida Supreme Court has listed factors which have been considered in such an inquiry:
1. Whether there is a physical invasion of the property.
2. The degree to which there is a diminution in value of the property. Or stated another way, whether the regulation precludes all economically reasonable use of the property.
3. Whether the regulation confers a public benefit or prevents a public harm. ■ •
4. Whether the regulation promotes the health, safety, welfare, or morals of the public.
5. Whether the regulation is arbitrarily and capriciously applied.
6. The extent to which the regulation curtails investment-backed expectations.
Id. at 1380-81. Some of these factors, admittedly, apply to physical property to determine whether governmental action is a taking (an exercise of eminent domain, which under the Fifth Amendment requires compensation) or instead an exercise of police power. Further* regarding factor 3, our supreme court has observed, “[i]f the regulation creates a public benefit it is more likely an exercise of eminent domain, whereas if a public harm is prevented it is more likely an exercise of the police power.” Id. at 1381. Factors 4 and 5, however, easily extend to consideration of intangible property such as the contract rights here.
We conclude that sections 440.105(3)(c) and 440.34 are not a permissible exercise of the State’s police power to restrict Claimant’s First Amendment right to contract for legal services to defend against an E/C’s motion to tax costs. The analysis of the application of the Graham factors 3, 4 and 5 changed when the 2003 amendments for the first time exposed claimants to liability for prevailing-party costs. That is, under factor 3, no public harm is prevented; under factor 4, the regulations here — the .restrictions on claimants’ ability to contract for legal representation to defend against a motion to tax costs — no longer promote the health, safety, welfare, or morals of the public; and under factor 5, their application to this scenario is arbitrary and capricious. See generally City of El Paso v. Simmons, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965) (noting, in reviewing statute governing forfeiture of public land sale contracts for nonpayment of interest, that Legislature has “wide discretion” in determining what is necessary to protect general welfare of people in association with police power); cf. Yeiser v. Dysart, 267 U.S. 540, 541, 45 S.Ct. 399, 69 L.Ed. 775 (1925) (observing, in reviewing suspension of attorney’s license, that Supreme Court was bound by Nebraska’s supreme court interpretation of Nebraska law restricting workers’ compensation fee; holding restriction did not violate attorney’s right to contract or Fourteenth Amendment due process clause; noting State may condition professional license as necessary “to make it a public good”).
We note that in Dysart v. Yeiser, 110 Neb. 65, 192 N.W. 953 (1923), the Nebraska supreme court held that a statute regu- *1052 latí ng “claims or agreements for legal services and disbursements” was a proper exercise of police power, which exercise was both “reasonable” and “in the interest of public welfare” because “a large percentage of the persons who come under the Workmen’s Compensation Act are not possessed of large means.” Id. at 955. Dysart is distinguishable, however, because the statute at issue there did not preclude fees entirely for legal work that could never result in “benefits secured,” as do the statutes at issue in the case before us. See id. at 954. Further, Lundy, 932 So.2d at 510, wherein this court held the 2004 version of section 440.34 (having the same wording as the version of section 440.34 at issue here) “does not offend the right to freely contract,” is distinguishable because it concerned fees payable by the E/C to a claimant rather than claimant-paid fees.

Conclusion

For the above reasons, we conclude that the prohibition on claimant-paid attorney’s fees in sections 440.105(3)(c) and 440.34are unconstitutional, and thus unenforceable, as they apply to cases where the fee is for legal services performed in defense against an E/C’s motion to tax costs. Cf. Garcia v. Andonie, 101 So.3d 339, 347 (Fla.2012) (holding additional element of entitlement to homestead exemption, in section 196.031(1), Florida Statutes, is unenforceable to the extent it limits class of individuals eligible for homestead exemption). Although section 440.105(3)(c) prohibits such attorneys from receiving unapproved fees, section 440.34 does not, under our holding today, preclude a JCC’s approving a fee agreement when a claimant chooses to obtain legal representation to aid in defense against an E/C’s motion to tax costs. Such a fee agreement must nonetheless, like all fees for Florida attorneys, comport with the factors set forth in Lee Engineering & Construction Co. v. Fellows, 209 So.2d 454, 458 (Fla.1968), and codified in the Rules Regulating the Florida Bar at rule 4 — 1.5(b).
REVERSED and REMANDED for further proceedings consistent with this opinion.
WOLF, J., concurs, and WETHERELL, J., concurs with written opinion.