IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

MARTHA MILES,

      Appellant,

v.

CITY OF EDGEWATER
POLICE
DEPARTMENT/PREFERRED
GOVERNMENTAL CLAIMS
SOLUTIONS and STATE OF
FLORIDA,

      Appellees.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-0165
**CORRECTED PAGES: pgs 13,17**
**CORRECTION IS UNDERLINED IN RED**
**MAILED: April 20, 2016**
**BY: NMS**

Opinion filed April 20, 2016

An appeal from an order of the Judge of Compensation Claims.
Mark A. Massey, Judge.

Dates of Accident: August 3, 2011, and November 29, 2011.

Michael J. Winer of the Law Offices of Michael J. Winer, P.A., Tampa, and Geoffrey
Bichler of Bichler, Kelley, Oliver & Longo, PLLC, Maitland, for Appellant.

Kimberly A. Hill of Kimberly A. Hill, P.L., Fort Lauderdale, for Amici Curiae
Fraternal Order of Police, Police Benevolent Association, International Union of
Police Associations, and Florida Association of State Troopers, in support of
Appellant.

George A. Helm, III, Lake Mary, and William H. Rogner, Winter Park, for Appellees
City of Edgewater Police Department/Preferred Governmental Claims Solutions.

Pamela Jo Bondi, Attorney General, Rachel Nordby, Deputy Solicitor General, Office of the Attorney General, Tallahassee, for Intervenor State of Florida.

THOMAS, J.

In this workers' compensation appeal, Claimant, a law enforcement officer, appeals two orders of the Judge of Compensation Claims (JCC): the first order denied Claimant's motion to approve two attorney's fee retainer agreements – one agreement provided for payment of a $1,500 retainer by Claimant's union, the Fraternal Order of Police Lodge 40 (FOP), and a second agreement provided that Claimant would pay her attorney an hourly fee once the $1,500 is exhausted – and the other order on appeal determined that Claimant failed to establish she sustained a compensable injury. Claimant challenges the constitutionality of sections 440.105 and 440.34, Florida Statutes, which limit attorney's fees as applied to her. She argues these provisions infringe on her First Amendment rights protected under the United States Constitution.

We hold that the challenged provisions violate Claimant's First Amendment guarantees of free speech, freedom of association, and right to petition for redress. For the reasons that follow, we reverse the appealed orders, and remand for a new

2

hearing on the motion for approval of the retainer agreements and on Claimant's petitions for benefits.

## Factual and Procedural Background

Through counsel, Claimant filed two petitions for benefits. The first petition alleged she was exposed over time to chemicals related to methamphetamine production, which resulted in her becoming disabled on August 3, 2011. The second petition alleged she was exposed to an intense smell that prevented her from conducting any further investigation regarding a shoplifting case. The Employer/Carrier (E/C) filed Notices of Denial regarding both petitions, disputing occupational causation of Claimant's condition. Claimant voluntarily dismissed those petitions, and her attorney withdrew as counsel of record.

Thereafter, two retainer agreements were signed in this matter – one between Bichler, Kelley, Oliver & Longo, PLLC (the Firm) and the Fraternal Order of Police (FOP), and one between the Firm and Claimant. The agreement with the FOP provided that the FOP would pay the Firm a flat fee of $1,500 to represent Claimant. In the retainer agreement signed by Claimant, she stated she understood the $1,500 fee paid by the FOP would not be "sufficient compensation" if the Firm expended more than 15 hours representing her; accordingly, Claimant agreed to pay her attorney an hourly fee for all attorney time expended beyond 15 hours. Claimant acknowledged in the agreement that the Workers' Compensation Law prohibits such

3

a fee arrangement, and specifically waived those statutory prohibitions. Claimant further acknowledged that the Firm advised her of the extremely difficult legal burden she must carry in order to prevail, and stated she was entering into this agreement with the understanding she may not prevail.

In July 2013, Claimant's attorney filed two more petitions, each alleging a chemical exposure during an investigation, and in each instance seeking compensability of the exposure along with an award of attorney's fees and costs. The E/C filed a response, again asserting that these claims were the same that had previously been denied, and again disputing occupational causation of Claimant's condition.

In January 2014, Claimant's attorney filed a "Motion to Approve Attorney's Fee," seeking approval of both retainer agreements. Claimant's attorney alleged that because of the extensive litigation necessary to pursue an exposure claim, "it would not be economically feasible for the undersigned to continue on a purely contingent basis with fee restrictions as contained in Florida Statute § 440.34." The attorney certified that if the JCC denied the retainer fee, the Firm may have no choice but to withdraw.

An evidentiary hearing on the motion took place in July 2014. At the hearing, Claimant's attorney referenced the time-intensive nature of pursuing an exposure claim under the Workers' Compensation Law, asserting, "It is economically not

4

feasible for our firm to continue to represent [Claimant] without being paid for it." Based on the fee restrictions contained in chapter 440 and the contingent nature of the fee, Claimant's attorney argued that "it is unreasonable to ask an attorney to basically work for free." The E/C represented that it was taking no position on the issue, because the fee request did not involve an E/C-paid fee.

After hearing argument, the JCC announced he was denying both retainer agreements as being contrary to the Workers' Compensation Law as it currently exists. In his written order, the JCC noted that the argument advanced was

> not limited to the assertion that a guideline fee would be inadequate to compensate her attorney in the event she prevailed on the claim, which is the issue in Castellanos [v. Next Door Co., 124 So. 3d 392 (Fla. 1st DCA 2013)] and was also the issue in the Emma Murray [v. Mariner Health, 994 So. 2d 105 (Fla. 2008)] decision. Rather, claimant argues that the *contingent nature of the fee*, in and of itself, is what leads to the alleged economic infeasibility. This is a new and different argument altogether. To argue that a guideline fee would be inadequate to compensate an attorney in the event the attorney prevailed on the claim is one thing; to argue that the attorney should be paid up front for time spent, without having secured any benefits . . . is an entirely different proposition, and I can find no persuasive authority or reason to support it. . . .

> It is not the province of a JCC to decide whether the law is fair or reasonable. Rather, it is the job of the JCC to apply the law as it exists. I find that the law as it currently exists does not allow for non-contingent, claimant-paid hourly fees for prosecution of a claim on the merits.

Thereafter, Claimant's attorney filed a motion to withdraw and to impress a lien based on hours expended. Claimant's attorney explained that the agreement

5

extended to prosecution of claims on behalf of Claimant only if the contractual agreement was approved by the JCC. Further, "[t]he clear understanding between the Claimant and the undersigned counsel was that, should the contract for representation not be approved, then the undersigned counsel would have no choice but to withdraw as counsel of record." Claimant's attorney explained that a conflict of interest now arose, because Claimant wished to pursue the claims, but her counsel's continued representation of Claimant would create a financial hardship for her counsel, "as well as an undue burden on her ability to practice law and to zealously represent her other clients if she were to be forced to remain as counsel of record on these claims." Finally, Claimant's attorney advised that Claimant had been served with this motion to withdraw "and has indicated she does not object to same." The JCC granted the motion to withdraw and impress lien, finding that "claimant and claimant's counsel are in a position of conflict."

The merits hearing went forward, with Claimant appearing *pro se*. Claimant renewed her request that the JCC approve the retainer agreements which would allow her, and the FOP on her behalf, to retain the Firm to represent her. The JCC again advised that the Workers' Compensation Law does not permit payment of non-contingent hourly attorney's fees. Claimant's prior attorney, who was present as an observer, asked that the JCC take judicial notice of affidavits Claimant had obtained from attorneys in which they asserted they did not have time to take this case on a

6

contingency basis. The E/C objected on grounds the affidavits were not the sort of documents that would qualify for judicial notice and were not relevant to the merits of Claimant's exposure claims. The JCC excluded the affidavits, agreeing they related to the attorney's fee question that was the subject of an earlier hearing and should have been submitted at that time.

Next, Claimant argued for entitlement to medical benefits, including ongoing care, for her two dates of accident. The E/C responded that it was Claimant's burden, as she was a law enforcement officer, to prove by a preponderance of the evidence that she was exposed to a specific level of a specific substance and that the exposure actually caused her injury. See § 112.1815(2)(a)1., Fla. Stat. (2011) (providing that first responders must prove exposure to toxic substance by preponderance of evidence). The E/C maintained there was no evidence of a specific exposure and no medical evidence linking any exposure to Claimant's condition.

Claimant was sworn in and testified regarding what occurred on the two dates of accident. She testified that she became ill after each incident and lost time from work, but was eventually released to return to work. She testified that she received some medical treatment after the second exposure. On cross-examination, she testified she had been diagnosed with Chronic Obstructive Pulmonary Disease prior to the first date of accident and had seen her personal physician on three separate visits regarding this condition. Claimant agreed it was possible that at the time of

7

the events she was a cigarette smoker, as she had stopped and started smoking many times. The E/C did not offer any exhibits or testimony from any witness.

In closing argument, Claimant asserted that losing a significant amount of work and requiring medical treatment for a short time after each event "would lead anyone to believe that there was something that occurred that was out of the ordinary from the individual normal health responses." The E/C noted that this case would have been difficult to prove, even with counsel. Because Claimant offered no evidence necessary to meet her burden of proof, the E/C asked that the JCC enter an order denying and dismissing her petitions for benefits with prejudice.

In his order, the JCC denied and dismissed both petitions, concluding:

> In this case, claimant offered no evidence as to what the specific substance or substances were to which she was exposed. Further, she offered no evidence as to the levels to which she was exposed. Finally, she offered no evidence that the exposure she suffered can cause the injury or disease she complains of. Without such evidence, claimant cannot carry and has not carried her required burden of proof.

Claimant filed a motion for rehearing or motion to vacate the final compensation order, arguing, in relevant part, that the JCC erred in not allowing her to submit the affidavits she had secured from attorneys who declined to represent her. Claimant argued that this was new information and evidence which "related to the futility of trying to hire alternative counsel given the nature of her case. The evidence relates directly to constitutional concerns of Equal Protection, Due Process of Law, and First Amendment freedoms which are fundamental rights under both the State and

8

Federal Constitutions."  Claimant argued that she had the right "to build a record related to constitutional issues."  The JCC denied the motion both on grounds it was untimely and on its merits.  Notwithstanding that denial, the JCC allowed Claimant to supplement the record and accepted the affidavits as proffered exhibits, noting that even if he accepted them as evidence, his ruling would not change.

## Legal Background

Paragraph 440.105(3)(c), Florida Statutes (2011), provides that an attorney receiving a fee for services rendered in connection with proceedings under chapter 440 commits a first-degree misdemeanor, unless the fee is approved by a JCC.  Subsection 440.34(1), Florida Statutes (2011), provides the JCC with the following limits on his or her ability to approve an attorney's fee:

> A fee, gratuity, or other consideration may not be paid for a claimant in connection with any proceedings arising under this chapter, unless approved by the [JCC] or court having jurisdiction over such proceedings.  Any attorney's fee approved by a [JCC] for benefits secured on behalf of a claimant must equal to 20 percent of the first $5,000 of the amount of the benefits secured, 15 percent of the next $5,000 of the amount of the benefits secured, 10 percent of the remaining amount of the benefits secured to be provided during the first 10 years after the date the claim is filed, and 5 percent of the benefits secured after 10 years.  The [JCC] shall not approve a compensation order, a joint stipulation for lump-sum settlement, a stipulation or agreement between a claimant and his or her attorney, or any other agreement related to benefits under this chapter which provides for an attorney's fee in excess of the amount permitted by this section.  The [JCC] is not required to approve any retainer agreement between the claimant and his or her attorney. The retainer agreement as to fees and costs may not be for compensation in excess of the amount allowed under this subsection or subsection (7).

9

Subsection 440.34(2) instructs the JCC to "consider only those benefits secured by the attorney" when awarding a fee. Thus, the relevant statutes impose a criminal penalty on any attorney who accepts a fee for providing legal representation to a workers' compensation claimant who may not successfully obtain benefits under chapter 440.

The First Amendment of the United States Constitution provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Freedom of speech is "among the fundamental personal rights and liberties which are secured to all persons by the Fourteenth Amendment against abridgment by a state." Thornhill v. Ala., 310 U.S. 88, 95 (1940).

Standard of Review

An as-applied challenge, as raised here, is an argument that a law which is constitutional on its face is nonetheless unconstitutional as applied to a particular case or party, because of its discriminatory effects; in contrast, a facial challenge asserts that a statute always operates unconstitutionally. In a First Amendment challenge, "content-based speech restrictions will not survive strict scrutiny unless the government can show that the regulation promotes a compelling government interest and that it chooses the least restrictive means to further the articulated

10

interest." Cashatt v. State, 873 So. 2d 430, 434 (Fla. 1st DCA 2004) (citing Sable

Commc'ns of Calif., Inc. v. Fed. Commc'ns Comm'n, 492 U.S. 115 (1989)). In

Florida workers' compensation proceedings, constitutional challenges of any sort

need not be preserved for appellate review, because JCCs lack jurisdiction to

determine constitutionality. See B & B Steel Erectors v. Burnsed, 591 So. 2d 644,

647 (Fla. 1st DCA 1991) ("[W]e note that workers' compensation judges do not have

the power to determine the constitutionality of a portion of the Workers'

Compensation Act, and that such issues may be raised for the first time on appeal,

without having been preserved below.").

Furthermore, the applicable legal test by which to review the legislation itself

depends upon the particular claim. Because First Amendment rights are

fundamental, "we apply strict scrutiny to section 440.34, regarding its effect on these

First Amendment rights when taken in conjunction with section

440.105(3)(c)." Jacobson v. Se. Pers. Leasing, Inc., 113 So. 3d 1042, 1048 (Fla. 1st

DCA 2013). "To survive strict scrutiny, a law '[a] must be necessary to promote a

compelling governmental interest and [b] must be narrowly tailored to advance that

interest,' and '[c] accomplishes its goal through the use of the least intrusive

means.'" Id. (quoting State v. J.P., 907 So. 2d 1101, 1110 (Fla. 2004)). The

applicable standard of "review," even though there is no constitutional ruling to

11

review, is *de novo*.  See <u>Medina v. Gulf Coast Linen Servs.</u>, 825 So. 2d 1018, 1020 (Fla. 1st DCA 2002).

Analysis

*Freedom of Speech*

Included in the First Amendment's fundamental guarantee of freedom of speech, association, and to petition for redress of grievances, is the right to hire and consult an attorney.  In <u>United Mine Workers of America, District 12 v. Illinois State Bar Association</u>, 389 U.S. 217 (1967), the Court held that "the freedom of speech, assembly, and petition guaranteed by the First and Fourteenth Amendments" gave the union "the right to hire attorneys on a salary basis to assist its members in the assertion of their legal rights."  <u>Id.</u> at 221-22.  The Court based this conclusion on "the premise that the rights to assemble peaceably and to petition for a redress for grievances are among the most precious of the liberties safeguarded by the Bill of Rights.  These rights, moreover, are intimately connected both in origin and in purpose, with the other First Amendment rights of free speech and free press," that, although not identical, are inseparable.  <u>Id.</u> at 222.  Here, Claimant argues that the fee statutes violate her right to free speech, because the evidence established that no attorney would take her case if counsel's compensation was limited to a "guideline" fee, regardless of whether that fee was paid by the E/C or by Claimant.

12

In Jacobson, this court addressed a similar challenge to the fee statutes challenged here, and explained that it viewed the "speech at issue here [was] Claimant's own words – given voice through his attorney – spoken or written before the court in his defense during litigation." 113 So. 3d at 1049. The claimant in Jacobson was faced with a claim for litigation costs by the E/C and wished to hire an attorney. The court held that the fee statutes – insofar as they limited claimant-paid fees due under contract (as opposed to fees paid by an E/C to a claimant's attorney) – violated the claimant's First Amendment rights, because they completely denied his right to hire an attorney given that no benefits could ever be secured as a result of the cost hearing, even upon a successful defense against the E/C's motion to tax costs. Id. at 1048-49. Because section 440.105(3)(c), Florida Statutes, makes it a crime for an attorney to accept a fee that is not approved by a JCC, and section 440.34, Florida Statutes, prohibits a JCC from approving a fee that is not tied to the amount of benefits secured, the two statutes operated as an unconstitutional infringement on the claimant's right to hire an attorney.

Addressing the governmental interests advanced as the basis for these statutes, the Jacobson court pointed to "the regulation of attorney's fees in general . . . ; lowering the overall cost of the workers' compensation system . . . ; and protecting injured workers who are of relatively limited financial means . . . ." Id. at 1049. The court found that the general interest in regulating fees in the context of prior case

13

law related "specifically to the state's interest in protecting the amount of benefits secured by an injured worker under chapter 440 from depletion to pay a lawyer's bills," and that it was "not evident from case law that these fee regulations represent a general interest in 'regulating attorney's fees.'"[1] Id.

The Jacobson court also held that the State's interest in lowering the cost of workers' compensation premiums was "not implicated in the instant case because it is Claimant, not the E/C, who would pay the fee implicated by the legal work at issue here – defending against the E/C's motion to tax costs. Thus, premiums charged by insurers would be unaffected." Id. Finally, the court held that the interest in "protecting the body of workers' compensation benefits from depletion" was not implicated, because "there can be no depletion of benefits where there are no benefits. A successful defense against an E/C's motion to tax costs does not constitute 'benefits secured.'" Id.

Here, by contrast, Claimant was seeking to obtain workers' compensation benefits, and she properly requested the JCC approve retainer agreements, under which Claimant and her union would pay an attorney out of their own funds to pursue

---

[1] The cases cited were Samaha v. State, 389 So. 2d 639, 640 (Fla. 1980); Lundy v. Four Seasons Ocean Grand Palm Beach, 932 So. 2d 506, 510 (Fla. 1st DCA 2006); and Khoury v. Carvel Homes South, Inc., 403 So. 2d 1043, 1045 (Fla. 1st DCA 1981).

14

those benefits. Despite this difference, the analysis that led to the holding in Jacobson still applies here, as we discuss below.

We start with the premise that "[laypersons] cannot be expected to know how to protect their rights when dealing with practiced and carefully counseled adversaries." Bhd. of R.R. Trainmen v. Va. ex rel. Va. State Bar, 377 U.S. 1, 7 (1964). Here, although the JCC specifically found the attorney affidavits would not have changed his ruling on the fee retainer issue, his ruling was that he did not have jurisdiction over the constitutional arguments, and the JCC could not declare the statutory provision unconstitutional. See Burnsed, 591 So. 2d at 647 (noting workers' compensation judges do not have authority to determine constitutionality of statutory provisions). In our view, the affidavits of the six attorneys support Claimant's argument that she could not secure their representation, as it is not economically feasible for an attorney to undertake representation in a case as complex as an exposure claim, knowing that a fee would be payable only if the claim was successful. In other words, no reasonable attorney would accept the risk of investing their labor into representing Claimant where the likelihood of receiving any compensation was uncertain.

The State cites United States Department of Labor v. Triplett, 494 U.S. 715, 717-18 (1990), to bring into question the sufficiency of Claimant's record. In Triplett, the assessment of the three attorneys relied upon by Mr. Triplett, as

described in the opinion, were all commenting in the third person: "'fewer qualified attorneys are accepting black lung claims,' and that more claimants are proceeding *pro se*. . . . 'few attorneys are willing to represent black lung claimants.' . . . 'many of his colleagues had '. . . stated unequivocally that they would not take black lung cases. . . .'" 494 U.S. at 723. Here, in contrast, the six affidavits spoke in the first person: All six attorneys averred they would not be able to take this case on a contingency basis under the current statutory scheme, where a fee is paid only if the prosecution of the claim is successful. The evidence is direct, unlike the evidence rejected in Triplett, 494 U.S. at 723-24, and the evidence persuasively supports Claimant's argument that sections 440.105 and 440.34 thwart her First Amendment rights, which can be adequately exercised only by obtaining legal representation.

Thus, because Claimant, a layperson, required legal counsel to pursue her claim for benefits, and without counsel she was in all likelihood destined to fail in that pursuit, there were no benefits to deplete, as in Jacobson. Therefore, the interest in regulating attorney's fees under the guise of protecting the amount of benefits secured by an injured worker against unreasonable attorney's fee payments, or of protecting the body of workers' compensation benefits from depletion, was not and could not be implicated if securing any benefits was effectively prevented by Claimant's inability to secure counsel. As the court in Jacobson observed, "there can be no depletion of benefits where there are no benefits." 113 So. 3d at 1049.

16

Furthermore, even to the extent that Claimant may have prevailed, and was only entitled to an E/C-paid fee based on the guidelines which would not cover the amount she paid out of pocket, Claimant would still be left in a better position with counsel, as without counsel she likely would obtain no benefits at all (and been exposed to a potential claim for costs as well). As noted in the concurring opinion to In re Amendment to the Rules Regulating the Florida Bar – Rule 4-1.5(f)(4)(B) of the Rules of Professional Conduct, 939 So. 2d 1032, 1041 (Fla. 2006), "[t]here are many reasons why a client would choose a particular lawyer at a rate which would be higher than that charged by other lawyers." Likewise, there may be many reasons why a claimant in a workers' compensation case may choose to pay more in attorney's fees than she otherwise would under the guidelines, including increasing her likelihood of obtaining any benefits at all. The equation is simple: Some compensation is superior to no compensation.

Furthermore, again as in Jacobson, an attorney's fee paid by Claimant and her union would have no impact on workers' compensation premiums, because Claimant and her union are the ones paying the fee, not the E/C. If Claimant prevailed, the E/C still could not be required to pay more in fees that the Legislature allows under section 440.34, Florida Statutes, regardless of Claimant obtaining legal counsel not authorized under chapter 440, as Claimant would pay the excess fee.

17

Nor are we persuaded that the exception to strict scrutiny review for laws that permissibly restrict the time, place, or manner of the exercise of the applicable rights has been satisfied. As we noted in Jacobson, "such [time, place and manner] laws must (a) be content-neutral, (b) be narrowly tailored to serve a significant (rather than "compelling") governmental interest, and (c) leave open alternative channels of communication." 113 So. 3d at 1049 (citing Clark v. Cmty. for Creative Non–Violence, 468 U.S. 288, 293 (1984)).

> Applying this test here, sections 440.105(3)(c) and 440.34 fail, because
>
> [t]here is no significant governmental interest being served, because there is no "benefit secured" associated with the fees at issue in this case and, thus, no need to protect such from depletion. Moreover, the legislation is not content-neutral. "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward [v. Rock Against Racism*, 491 U.S. 781, 791, 1989)]. The fee restrictions at issue here are not content-neutral, both because they are limited to work done on workers' compensation issues as opposed to other areas of law, and because they are imposed only on claimants arguing [entitlement to benefits], rather than on both parties' arguments . . . .

Id. at 1050.

Thus, we conclude that, to the extent these statutes prohibit a workers' compensation claimant (or a claimant's union) from paying attorney's fees out of their own funds for purposes of litigating a workers' compensation claim, these statutes are unconstitutional, because they impermissibly infringe on a claimant's

18

rights to free speech and to seek redress of grievances. Additionally, any fee agreement "must nonetheless, like all fees for Florida attorneys, comport with the factors set forth in *Lee Engineering & Construction Co. v. Fellows,* 209 So. 2d 454, 458 (Fla.1968), and codified in the Rules Regulating the Florida Bar at rule 4–1.5(b)." Jacobson, 113 So. 3d at 1052. Consequently, we hold that no attorney accepting fees in this situation may be prosecuted under section 440.105(3)(c), Florida Statutes.

*Freedom to Contract*

The Jacobson court also held that the statutes under review violated the claimant's right to contract for legal services. Id. at 1050. "The right to make contracts of any kind, so long as no fraud or deception is practiced and the contracts are legal in all respects, is an element of civil liberty possessed by all persons who are sui juris. It is both a liberty and property right and is within the protection of the guaranties against the taking of liberty or property without due process of law." State ex rel. Fulton v. Ives, 167 So. 394, 398-99 (Fla. 1936) (citations omitted). "The right to contract is one of the most sacrosanct rights guaranteed by our fundamental law." Lawnwood Med. Ctr. v. Seeger, 959 So. 2d 1222, 1224 (Fla. 1st DCA 2007).

"Like the First Amendment rights to freedom of speech, assembly, and petition, the right to contract for legal services is a fundamental right, implicating strict scrutiny." Jacobson, 113 So. 3d at 1050. Although strict scrutiny applies,

19

because the right to contract is a property right, the relevant exception to strict scrutiny review is whether the restrictions on the right to contract represent a "reasonable restraint" under the State's police power, "the right being 'the general rule' and its restraint 'the exception to be exercised when necessary to secure the comfort, health, welfare, safety and prosperity of the people.'" Id. at 1050-51 (quoting Golden v. McCarty, 337 So. 2d 388, 390 (Fla. 1976)).

The Jacobson court determined that the statutory limitations on attorney's fees were not a permissible exercise of that police power in the context of a legal defense against a motion to tax costs, because the fee provisions precluded entirely the claimant's ability to obtain legal representation. Id. at 1051. The Jacobson court distinguished the determination in Lundy v. Four Seasons Ocean Grand Palm Beach, 932 So. 2d 506 (Fla. 1st DCA 2006), that section 440.34 "'does not offend the right to freely contract,'" on grounds that Lundy addressed E/C-paid fees as opposed to claimant-paid fees. Id. at 1052 (quoting Lundy, 932 So. 2d at 510).

Here, although, Claimant is seeking benefits (unlike the claimant in Jacobson), she argues that her right to contract is no less violated by the strict adherence to the fee schedule than it was under the circumstances in Jacobson, where the issue was not an E/C-paid fee, but a claimant-paid fee, because the challenged statutes prevented Claimant from retaining and paying an attorney with her own funds (or those of her union) in an amount not based on the mandated statutory fee

20

schedule. The issue, therefore, is whether sections 440.105 and 440.34 are constitutionally permissible restrictions on claimant-paid fees based on the State's police power.

"There is no settled formula for determining when the valid exercise of police power stops and an impermissible encroachment on private property rights begins." Graham v. Estuary Props., Inc., 399 So. 2d 1374, 1380 (Fla. 1981) (reviewing decision to deny approval for development of wetlands). As we noted in Jacobson, however, the Florida Supreme Court listed some factors in Graham which have been considered in past appeals, and the Jacobson court found that the following of those factors were relevant in addressing the fees statutes at issue here: (1) whether the regulation confers a public benefit or prevents a public harm; (2) whether the regulation promotes the health, safety, welfare, or morals of the public; and (3) whether the regulation is arbitrarily and capriciously applied. Jacobson, 113 So. 3d at 1051.

Regarding factor (1), the supreme court observed, "If the regulation creates a public benefit it is more likely an exercise of eminent domain, whereas if a public harm is prevented it is more likely an exercise of the police power." Graham, 399 So. 2d at 1381. The fee regulations here are intended to prevent public harm, and are therefore at least purportedly an exercise of the State's police power. See generally City of El Paso v. Simmons, 379 U.S. 497, 508 (1965) (noting, in

21

reviewing statute governing forfeiture of public land sale contracts for nonpayment of interest, that Legislature has "wide discretion" in determining what is necessary to protect general welfare of people in association with police power).

For the same basic reasons addressed above holding that these statutes do not advance the State's interest in regulating attorney's fees to protect the amount of benefits a claimant is awarded, the statutes do not <u>actually</u> prevent a public harm. To the contrary, as Claimant established, the statutes actually operated to discourage attorneys from representing her, thus potentially placing the burden for any allegedly compensable injury or condition, which might normally be borne by the E/C, on the public as a whole, if Claimant is forced to access governmental benefits. Thus, the statutes cannot be reasonably read to prevent a public harm.

Likewise, the statutes' restrictions on a claimant's ability to contract for legal representation to obtain benefits no longer promote the health, safety, welfare, or morals of the public when, as demonstrated here, an injured worker is unable to secure benefits to which she could potentially otherwise be entitled under law, because of the statutory restrictions on attorney compensation. Finally, application of the statutes to this scenario is arbitrary and capricious, because only the attorney's fees paid to claimants' attorneys are regulated, and E/Cs are free to contract for legal services without limitation. <u>See</u> <u>id.</u> (holding application of statutes to scenario in

which only claimant is restricted from paying for legal services in an action for costs is arbitrary and capricious).

We recognize that the Legislature could intend to prevent the public harm caused when injured workers might quixotically seek benefits the worker is highly unlikely to obtain. In addition, the Legislature could rationally seek to disincentivize meritless litigation which disrupts the workplace and causes unnecessary hostility between employers and employees. But in a free society which attempts to allow individuals the intellectual prerogative to personally weigh the benefits and risk of exercising their statutory right to obtain redress for their injury, we hold that the rational intent to minimize workplace litigation cannot ultimately trump the benefits the public obtains by allowing an injured worker, or one who personally thinks she is injured, to seek redress under law. Thus, the public harm to be prevented – undue depletion of workers' financial resources and undue disruption of the workplace – does not prevail against the individual's right to contract for legal representation.

Because the record establishes that Claimant demonstrated that, as applied to her, the restrictions on her right to contract for legal work in workers' compensation cases do not adequately prevent public harm, no longer promote the health, safety, welfare, and morals of the public, and are being arbitrarily and capriciously applied, sections 440.105 and 440.34 are not a valid exercise of the State's police power, and thus are unconstitutional violations of the right to contract.

23

*Waiver*

Florida case law has long recognized that an individual can waive his or her personal constitutional rights. In re Shambow's Estate v. Shambow, 15 So. 2d 837, 837 (Fla. 1943) ("It is fundamental that constitutional rights which are personal may be waived."). Courts have also recognized the ability to waive various protective rights, including the right to present mitigating evidence in the penalty phase of a first-degree murder trial, see Spann v. State, 857 So. 2d 845, 853 (Fla. 2003); the right to require a warrant before authorities can search one's property, see Lockwood v. State, 470 So. 2d 822 (Fla. 1985); the right to remain silent, see Bailey v. State, 31 So. 3d 809, 812 (Fla. 1st DCA 2009); and the right to a jury or speedy trial, see Torres v. State, 43 So. 3d 831 (Fla. 1st DCA 2010), and State v. Burgess, 153 So. 3d 286 (Fla. 2d DCA 2014).

Logically, then, if a person can waive constitutional rights, a person can also waive statutory rights such as those in section 440.34, Florida Statutes. For example, in In re Amendment to the Rules Regulating the Florida Bar – Rule 4-1.5(f)(4)(B) of the Rules of Professional Conduct, the Florida Supreme Court approved a Florida Bar rule that allowed medical malpractice plaintiffs to waive the constitutional caps on attorney's fees, subject to certain conditions. 939 So. 2d at 1038-39. Notably, those conditions did not require judicial review of such waivers; whereas in the workers' compensation context, the JCC must approve as reasonable the fee a

24

claimant agrees to pay her attorney. Likewise, here, we see no reason why a workers' compensation claimant should not be able to waive a limitation on claimant attorney's fees and agree to pay her attorney with her own (or someone else's) funds, subject to a JCC's finding that the fee is reasonable.

## Conclusion

In conclusion, the restrictions in sections 440.105 and 440.34, when applied to a claimant's ability to retain counsel under a contract that calls for the payment of a reasonable fee by a claimant (or someone on his or her behalf), are unconstitutional violations of a claimant's rights to free speech, free association, and petition – and are not permissible time, place, or manner restrictions on those rights. Likewise, those provisions also represent unconstitutional violations of a claimant's right to form contracts – and are not permissible police power restrictions on those rights. Thus, we hold that the criminal penalties of section 440.105(3)(c), Florida Statutes, are unenforceable against an attorney representing a workers' compensation client seeking to obtain benefits under chapter 440, as limited by other provisions discussed above.

We conclude that the statutory restrictions are unconstitutional, and that the proper remedy is to allow an injured worker and an attorney to enter into a fee agreement approved by the JCC, notwithstanding the statutory restrictions.

25

Accordingly, we reverse the orders of the JCC, and remand for a new hearing on the motion to approve the retainer agreements and on the petitions for benefits.

REVERSED and REMANDED for further proceedings consistent with this opinion.

ROBERTS, C.J., and WOLF, J., CONCUR.